## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____

|  |  |  |
|---|---|---|
| FUSONG JINLONG WOODEN GROUP CO., LTD. ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| YIHUA LIFESTYLE TECHNOLOGY CO., LTD. ET AL., | ) ) ) | |
| Consolidated Plaintiffs, | ) ) | |
| and | ) ) | Court No. 19-00144 |
| LUMBER LIQUIDATORS SERVICES, LLC ET AL., | ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) | |
| Defendant-Intervenor. | ) ) | |

_____

### DEFENDANT'S MOTION FOR RECONSIDERATION

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

TARA K. HOGAN
 Assistant Director

                                          BRENDAN JORDAN
                                          Trial Attorney
OF COUNSEL:                               Commercial Litigation Branch
                                          Civil Division
RACHEL BOGDAN                             United States Department of Justice
Attorney                                  P.O. Box 480
Office of the Chief Counsel               Ben Franklin Station
for Trade Enforcement and Compliance      Washington, D.C. 20044
United States Department of Commerce      Tel: (202) 616-0342

January 23, 2023                          Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

ORDER ............................................................................................................................1

ARGUMENT ....................................................................................................................4

I.      Standard Of Review ...............................................................................................4

II.     Reconsideration Is Warranted To Correct A Legal Error In The Court's Order With
Respect To 19 U.S.C. § 1677e(d) .........................................................................5

        A.    The Court's Interpretation Of 19 U.S.C. § 1677e(d) ...............................6

        B.    The Plain Language And Construction Of 19 U.S.C. § 1677e(d)
             Authorizes The Use Of A Transaction-Specific Dumping Margin As An
             Adverse Facts Available Rate ...................................................................7

             1.    A Transaction-specific Margin Is A Dumping Margin From A Segment
                  Of A Proceeding Within The Meaning Of 19 U.S.C. § 1677e(d)(1)...........7

             2.    A Transaction-specific Margin Is A Dumping Margin Calculated In
                  A Segment Of A Proceeding Reviewable By The Court..........................10

III.    Reconsideration Is Warranted Because The Court Decided Issues Beyond Those
Presented By The Parties .....................................................................................13

      CONCLUSION.....................................................................................................17

## **TABLE OF AUTHORITIES**

**Cases**                                                                                    **Page(s)**

*BMW of N. Am., LLC v. United States*,
   926 F. 3d 1291 (Fed. Cir. 2019)...................................................................................... 7

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)........................................................................................................ 9

*Ellwood City Forge Co. v. United States*,
   600 F. Supp. 3d 1281 (Ct. Int'l Trade 2022) ................................................................. 16

*F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*,
   216 F.3d 1027 (Fed. Cir. 2000)...................................................................................... 7

*Ford Motor Co. v. United States*,
   751 F. Supp. 2d 1316 (Ct. Int'l Trade 2010) ............................................................ 5, 16

*Fuwei Films (Shandong) Co. v. United States*,
   791 F. Supp. 2d 1381 (Ct. Int'l Trade 2011) ................................................................ 16

*GPX Intern. Tire Corp. v. U.S.*,
   666 F.3d 732 (Fed. Cir. 2011)...................................................................................... 10

*Greenlaw v. United States*,
   554 U.S. 237 (2008)...................................................................................................... 15

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
   853 F. Supp. 2d 1352 (Ct. Int'l Trade 2012) ................................................................. 8

*Hyundai Steel Co. v. United States*,
   319 F. Supp. 3d 1327 (Ct. Int'l Trade 2018) ................................................................ 14

*Irwin Indus. Tool Co. v. United States*,
   269 F. Supp. 3d 1294 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 1356 (Fed. Cir. 2019) .......... 5, 13

*iScholar, Inc. v. U.S.*,
   2011 WL 109014 (Ct. Int'l Trade 2011)....................................................................... 12

*Lorillard v. Pons*,
   434 U.S. 575 (1978)...................................................................................................... 10

*Nan Ya Plastics Corp., Ltd. v. U.S.*,
   810 F.3d 1333 (Fed. Cir. 2016)..................................................................................... 11

*POSCO v. United States*,
 337 F. Supp. 3d 1265 (Ct. Int'l Trade 2018) .................................................................. 14

*Precision Specialty Metals, Inc. v. United States*,
 25 C.I.T. 1375 (2001) ........................................................................................................ 4

*Senza-Gel Corp. v. Seiffhart*,
 803 F.2d 661 (Fed. Cir. 1986)........................................................................................... 4

*Unemployment Comp. Comm'n of Alaska v. Aragon*,
 329 U.S. 143 (1946)......................................................................................................... 16

*Union Steel v. United States*,
 804 F. Supp. 2d 1356 (Int'l Trade 2011).................................................................... 4, 5

*United States v. Sineneng-Smith*,
 140 S. Ct. 1575 (2020)..................................................................................................... 15

**Statutes**

19 U.S.C. § 1516a................................................................................................... passim

19 U.S.C. § 1677 .................................................................................................... 8, 9

19 U.S.C. § 1677e ................................................................................................ passim

28 U.S.C. § 2637 .................................................................................................... 16

Trade Preferences Extension Act of 2015,
PL 114-27, June 29, 2015, 129 Stat 362 .............................................................. 7, 12

**Regulations**

19 C.F.R. § 351.102 ................................................................................................ 6, 11

19 C.F.R. § 351.414 ................................................................................................ 8, 9

**Administrative Determinations**

*Multilayered Wood Flooring From the People's Republic of China, Final Results of
Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial
Rescission*,
84 Fed. Reg. 38,002 (Dep't of Commerce Aug. 5, 2019)........................................... 11

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:     THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

―――――――――――――――――――――――――――――

| | |
|---|---|
| FUSONG JINLONG WOODEN GROUP CO., LTD. ET AL., | ) )  ) |
| Plaintiffs, | ) ) |
| and | ) ) |
| YIHUA LIFESTYLE TECHNOLOGY CO., LTD. ET AL., | ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| and | ) ) |
| LUMBER LIQUIDATORS SERVICES, LLC ET AL., | )     Court No. 19-00144 ) ) |
| Plaintiff-Intervenors, v. | ) ) ) |
| UNITED STATES, | ) ) |
| Defendant, and | ) ) ) |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) |
| Defendant-Intervenor. | ) ) |

―――――――――――――――――――――――――――――

## <u>ORDER</u>

Upon consideration of defendant's motion for reconsideration pursuant to Rules 7, 54(b), and 59 of the Court's Rules, it is hereby

ORDERED that defendant's motion is GRANTED.

The December 22, 2022 opinion and order (ECF No. 106) is hereby revised and amended to reflect that Commerce lawfully selected Sino-Maple's adverse facts available (AFA) rate.  The Court will issue a subsequent decision deciding the issues upon which this Court previously reserved decision.

Dated: _____

     New York, NY

                                      _____

                                        Richard K. Eaton
                                        Senior Judge

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:      THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| FUSONG JINLONG WOODEN GROUP CO., LTD. ET AL., | ) ) ) |
| Plaintiffs, | ) ) |
| and | ) ) |
| YIHUA LIFESTYLE TECHNOLOGY CO., LTD. ET AL., | ) ) ) |
| Consolidated Plaintiffs, | ) ) |
| and | ) ) |
| LUMBER LIQUIDATORS SERVICES, LLC ET AL., | )   Court No. 19-00144 ) ) |
| Plaintiff-Intervenors, | ) ) |
| v. | ) ) |
| UNITED STATES, | ) ) |
| Defendant, | ) |
| and | ) ) |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) ) ) |
| Defendant-Intervenor. | ) ) |

## <u>DEFENDANT'S MOTION FOR RECONSIDERATION</u>

Pursuant to Rules 7, 54(b), and 59 of the Court's Rules, defendant, the United States, respectfully requests that the Court reconsider the portions of its December 22, 2022 opinion and order that remanded this matter to the United States Department of Commerce with instructions to reconsider and redetermine Sino-Maple's rate based upon facts available with an adverse

inference (AFA). *See Fusong Jinlong Wooden Group Co. v. United States*, Slip Op. 22-155 (Dec. 22, 2022) (Order or Slip Op.) at 49, ECF No. 106. Reconsideration of the Court's order is warranted because the Court's remand decision is predicated on an incorrect interpretation of 19 U.S.C. § 1677e(d) and the parties never preserved or presented the issue of whether 19 U.S.C. § 1677e(d) authorizes Commerce to use a transaction-specific margin as an adverse rate. We further respectfully request that the Court stay the deadline for the remand redetermination pending disposition of this motion for reconsideration.

## ARGUMENT

### I.    Standard Of Review

Rule 54(b) of the Rules of this Court provides that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action . . . and may be revised at any time before the entry of judgment." Ct. Int'l Trade R. 54(b). The Court also possesses inherent authority to reconsider interlocutory orders at any time. *See Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 663 (Fed. Cir. 1986) (observing that trial court "employed its inherent power to reconsider its interlocutory decrees"); *Union Steel v. United States*, 804 F. Supp. 2d 1356, 1367 (Ct. Int'l Trade 2012) (stating that the Court possesses "general authority . . . to reconsider a non-final order prior to entering final judgment"). Under Rule 59, "the court may, on motion {for reconsideration} . . . amend findings of fact and conclusions of law or make new ones . . ." Ct. Int'l Trade R. 59; *see also Precision Specialty Metals, Inc. v. United States*, 25 C.I.T. 1375 (2001) ("it has been well-recognized that . . . {reconsideration under Rule 59} is broad enough to include a rehearing *of any matter decided by the Court*.") (emphasis added) (internal quotation marks omitted).

Whether to grant a motion for reconsideration is within the sound discretion of the Court and shall be granted "'as justice requires.'" *See Union Steel*, 804 F. Supp. 2d at 1367 (quoting Fed. R. Civ. P. 60(b) advisory committee note (1946)); *see also Ford Motor Co. v. United States*, 751 F. Supp. 2d 1316, 1317 (Ct. Int'l Trade 2010). Reconsideration is a method "to correct a significant flaw in the original {decision}, . . . {it} is not a mechanism to allow a losing party the chance to repeat arguments or to relitigate issues previously before the court." *Ford Motor Co.*, 751 F. Supp. 2d at 1317 (internal quotation marks omitted).

In considering whether to grant a motion for reconsideration, the Court may weigh "whether there has been a controlling or significant change in the law or whether the court previously 'patently' misunderstood the parties, decided issues beyond those presented, or failed to consider controlling decisions or data." *See Irwin Indus. Tool Co. v. United States*, 269 F. Supp. 3d 1294, 1300–01 (Ct. Int'l Trade 2017), *aff'd*, 920 F.3d 1356 (Fed. Cir. 2019). Reconsideration may also be warranted if there is "new evidence {available}, the need to correct a clear factual or legal error, or the need to prevent a manifest injustice." *See Ford Motor Co.*, 751 F. Supp. 2d at 1317.

## II.    Reconsideration Is Warranted To Correct A Legal Error In The Court's Order With Respect To 19 U.S.C. § 1677e(d)

As a result of the Court's incorrect interpretation of 19 U.S.C. § 1677e(d), the Court concluded that Commerce failed to use a lawful method to select Sino-Maple's AFA rate. Had the Court applied the correct interpretation of 19 U.S.C. § 1677e(d), which was not presented in the parties' briefing, the Court would have sustained the method Commerce used to select Sino-Maple's AFA rate. Accordingly, the Court should grant our reconsideration motion, and revise and amend its order to reflect the correct interpretation of 19 U.S.C. § 1677e(d). *See Ford Motor*

*Co.*, 751 F. Supp. 2d at 1317 (reconsideration is appropriate to correct "significant flaw{s}" and "legal error{s}" in a decision).

###   A.   The Court's Interpretation Of 19 U.S.C. § 1677e(d)

In its order, the Court held that 19 U.S.C. § 1677e(d) does not permit Commerce to choose a transaction-specific dumping margin as an AFA rate. *See* Slip Op. at 37. Thus, the Court held that Commerce acted contrary to the statute when it selected Senmao's highest transaction-specific dumping margin as the AFA rate for Sino-Maple. *Id.* In examining 19 U.S.C. § 1677e(d), the Court recited the statute's language, which permits Commerce to use the highest "dumping margin" from any "segment" of the proceeding as an AFA rate. *Id.* at 33-34 (citing 19 U.S.C. § 1677e(d)(1) and (d)(2)). Because Commerce's regulations define a segment as "a portion of the proceeding that is reviewable under {19 U.S.C. § 1516a}," the Court held that Commerce may only select as an AFA rate a rate that can be reviewed by the Court. *Id.* at 35 (citing 19 C.F.R. § 351.102(b)(47)). Further, the Court held that a transaction-specific dumping margin is not reviewable because "the 'reviewable' determinations provided under 19 U.S.C. § 1516a(2)(B), in the case of an antidumping duty proceeding, refers to the overall dumping margin percentages assigned to specific companies that serve as the basis for determining an antidumping duty rate or inform Commerce's decision to initiate an investigation or review." *Id.* at 35, n.41 (citing 19 U.S.C. § 1516a(2)(B)).

In examining the legislative history of the statute, the Court looked to language from the Leveling the Playing Field Act, a proposed bill sponsored by Senator Sherrod Brown, to understand how Congress thought the AFA dumping margin should be determined. *Id.* at 35-37. The Leveling the Playing Field Act, S. 2994, 113th Cong. (2013-2014), identified four types of margins Commerce may use as an AFA rate, including "a dumping margin based on an individual sale of subject merchandise." *See* Slip Op. at 35-36. The Court held that because

Congress did not adopt the "individual sale" language in the final version of the statute, Congress made the intentional and purposeful decision not to permit Commerce to use a transaction-specific dumping margin as the basis for an AFA rate. *Id.* at 36-37.

**B. The Plain Language And Construction Of 19 U.S.C. § 1677e(d) Authorizes The Use Of A Transaction-Specific Dumping Margin As An Adverse Facts Available Rate**

When Commerce uses adverse facts available in an antidumping duty proceeding, it may use "any dumping margin from any segment of the proceeding under the applicable antidumping order." 19 U.S.C. § 1677e(d)(1)(B). In addition, "{i}n carrying out paragraph (1)" Commerce may apply "any dumping margins specified under that paragraph, including the highest such rate or margin," based on an evaluation by Commerce of the situation that resulted in Commerce using AFA. 19 U.S.C. § 1677e(d)(2). Congress has recognized that, in applying the highest rate, Commerce need not demonstrate that a dumping margin "reflects an alleged commercial reality of the interested party." *See* Trade Preferences Extension Act of 2015, PL 114-27, June 29, 2015, 129 Stat 362 (language implemented in 19 U.S.C. §§ 1677e). Further, "Commerce has wide discretion when it comes to selecting an AFA rate for non-cooperating parties." *BMW of N. Am., LLC v. United States*, 926 F. 3d 1291, 1301 (Fed. Cir. 2019) (citing *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1033 (Fed. Cir. 2000) ("Commerce, not the courts, must make determinations as to proper anti-dumping margins.")).

Commerce's use of the highest transaction-specific dumping margin on the record of the review as Sino-Maple's AFA rate was in accordance with law because 19 U.S.C. §§ 1677e(d)(1)(B) and (d)(2) permit the use of a transaction-specific dumping margin as an AFA rate.

**1. A Transaction-specific Margin Is A Dumping Margin From A Segment Of A Proceeding Within The Meaning Of 19 U.S.C. § 1677e(d)(1)**

A "dumping margin" is "the amount by which the normal value exceeds the export price or constructed export price of the subject merchandise."  19 U.S.C. § 1677(35)(A).  Additionally, the statute defines a "weighted average dumping margin" as the overall rate of dumping determined by "dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such exporter or producer."  19 U.S.C. § 1677(35)(B).  Commerce's regulations outline the methods Commerce uses for calculating a weighted-average dumping margin and individual comparison results (*i.e.*, dumping margins), including the average-to-average method, the transaction-to-transaction method, and the average-to-transaction method.  *See* 19 C.F.R. § 351.414(a) ("this section explains how and when {Commerce} will average prices in making comparisons of export price or constructed export price with normal value"); *see also* 19 C.F.R. § 351.414(b)(1)-(3).  These calculations are based on the comparison of an individual export price or constructed export price with a corresponding normal value, that is, an individual comparison result or dumping margin.  Commerce then aggregates these individual comparison results to determine an overall weighted-average dumping margin.  *See Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 853 F. Supp. 2d 1352, 1359 (Ct. Int'l Trade 2012) ("{T}he § 1677(35)(A) dumping margin serves as the basis for a § 1677(35)(B) weighted average dumping margin, and the weighted average dumping margin serves as the basis for the antidumping duty or estimated antidumping duty.").

Pursuant to these prescribed methods, Commerce used an average-to-transaction comparison in calculating the 85.13 percent dumping margin.  *See* Nonmarket Economy Margin Calculation Program (Dec. 17, 2018), CR 269.  In other words, in calculating the highest transaction-specific dumping margin of 85.13 percent, Commerce compared the export price for

one of Senmao's transactions to the normal value, based on the factors of production and surrogate values for the subject merchandise in the contemporaneous month.  *See* 19 C.F.R. § 351.414(b)(3), *see also* Nonmarket Economy Margin Calculation Program (Dec. 17, 2018), CR 269.  Thus, the 85.13 percent rate equates to "the amount by which the normal value exceeds the export price of the subject merchandise."  *See* 19 U.S.C. § 1677(35)(A); *see also* 19 C.F.R. § 351.414(b)(3).  Therefore, Commerce calculated a "dumping margin" within the plain meaning of 19 U.S.C. § 1677(35)(A) when it calculated the transaction-specific dumping margin of 85.13 percent.  "{T}he court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

Because, as set forth above, the statutory term "dumping margin" includes transaction-specific margins, we respectfully disagree that Congress "rejected" using transaction-specific margins as the basis for an AFA rate.  *See* Slip Op. at 35.  To the contrary, the statute's use of the term "dumping margin" *confirms* Senator Brown's original intent for Commerce to have discretion to select the highest transaction-specific dumping margin where warranted.  Moreover, other legislative history indicates that the revisions to 19 U.S.C. § 1677e made in the Trade Preferences Extension Act of 2015 (TPEA) were intended to "provide{} the Department of Commerce with *more discretion* to determine {a}{sic} dumping or subsidy rate to apply to an uncooperative foreign company."  *See* 161 Cong. Rec. H4666-01, H4695 (June 25, 2015) (emphasis added).

As the Court recognized, Commerce used transaction-specific margins when selecting among the facts available in cases predating enactment of the TPEA.  *See* Slip Op. at 34 n.40.  To now hold that Commerce lacks the authority to use a well-established methodology

contravenes congressional intent to give Commerce *more* discretion under the statute.  Moreover, such an interpretation would conflict with the principle that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *See, e.g., Lorillard v. Pons*, 434 U.S. 575, 580 (1978) (cleaned up); *see also GPX Intern. Tire Corp. v. U.S.*, 666 F.3d 732, 739 (Fed. Cir. 2011) (superseded by statute).  Because Congress was aware of use of transaction-specific dumping margins when selecting among adverse facts available prior to enacting the TPEA and did not change the statute to preclude Commerce from using such a margin as an AFA rate, Commerce maintains the authority to select a transaction-specific margin as an AFA rate.

### 2.  A Transaction-specific Margin Is A Dumping Margin Calculated In A Segment Of A Proceeding Reviewable By The Court

The 85.13 percent margin selected as the AFA rate is a dumping margin from a segment of the proceeding, or administrative review, and is therefore reviewable by the Court.  In selecting an AFA rate, the statute permits Commerce to use the highest dumping margin "from any segment of the proceeding." *See* 19 U.S.C. §§ 1677e(d)(1)(B); 1677e(d)(2).  Namely, in describing Commerce's discretion to apply the highest AFA rate, the statute provides that "{i}n carrying out paragraph (1), {*i.e.*, the application of adverse inferences, Commerce} may apply any of the . . . dumping margins specified under that paragraph {*i.e.*, any dumping margin from any segment of the proceeding}, including the highest such . . . margin, based on the evaluation by {Commerce} of the situation that resulted in {Commerce} using an adverse inference in selecting among the facts otherwise available." 19 U.S.C. § 1677e(d)(2).

The 85.13 percent transaction-specific margin is "from" a "segment of the proceeding" under the applicable antidumping order within the meaning of 19 U.S.C. §§ 1677e(d)(1)(B) and (d)(2) because it was calculated during an administrative review of an antidumping duty order.

*See Multilayered Wood Flooring From the People's Republic of China, Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2016-2017,* 84 Fed. Reg. 38,002 (Dep't of Commerce Aug. 5, 2019).  Indeed, it was calculated during the specific administrative review that is the subject of this case.  As recognized by the Court, the statute does not define the term "segment."  *See* Slip Op. at 33.  However, Commerce's regulations define a "segment" of a proceeding as "a portion of the proceeding that is reviewable under {19 U.S.C.§ 1516a}."  19 C.F.R. § 351.102(b)(47)(i).  The regulations further provide a few examples of segments of a proceeding, including, among other items, an antidumping "review of an order."  19 C.F.R. § 351.102(b)(47)(ii); *see also* 19 U.S.C. § 1516a(2)(B)(i) (defining reviewable determinations as, among other items, "{a} final determination . . . by {Commerce} under section 1675 of this title").

Commerce's final results of an antidumping duty administrative review consists of many determinations, including, but not limited to, the calculation of transaction-specific dumping margins for individually examined respondents and the calculation of a weighted average dumping margin for each individually examined respondent.  *See, e.g.*, *Final Results* (P.R. 351) and accompanying Issues and Decision Memorandum (IDM) (P.R. 341) at Comment 1-17.  Each of these determinations is reviewable by the Court when brought as part of a challenge to the final results.  *See* 19 U.S.C. § 1516a(b)(1)(B)(i) (providing that "{t}he court shall hold unlawful any determination, finding or conclusion found ... to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."); *see also Nan Ya Plastics Corp., Ltd. v. U.S.*, 810 F.3d 1333, 1341-1349 (Fed. Cir. 2016) (detailing that the Federal Circuit applies the same standard of review as the Court of International Trade and reviewing, under that standard, whether Commerce's use of a transaction-specific margin as an AFA rate was in accordance with

law); *see also iScholar, Inc. v. U.S.*, 2011 WL 109014 at \*2-3 (Ct. Int'l Trade 2011) (reviewing whether the transaction-specific AFA margin Commerce selected in the final results of the antidumping duty order on certain lined paper products from India was supported by substantial evidence and in accordance with law).[1]

Indeed, in the underlying review, Jiangsu Senmao and Sino-Maple challenged Commerce's calculation of the transaction-specific margin used as Sino-Maple's AFA rate in the preliminary results. *See* Letter from Sino-Maple and Jiangsu Senmao Bamboo and Wood Industry Co., Ltd., "Multilayered Wood Flooring from the People's Republic of China: Case Brief" dated March 4, 2019, at 5-6 (C.R. 254) (arguing that the highest transaction-specific dumping margin on the record was 85.13 percent, not 95.61 percent). Commerce considered this challenge and, in response, revised the highest transaction-specific dumping margin to be 85.13 percent. *See* IDM at Comment 2. Had Commerce disagreed with the parties' position and not amended the AFA rate, they could have challenged before the Court that Commerce's calculation of the 96.51 percent rate was not supported by substantial evidence. *See* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I), 1516a(a)(2)(B)(iii), and 1516a(b)(1).

Thus, because Commerce calculated the 85.13 percent transaction-specific dumping margin during an administrative review of the multilayered wood flooring antidumping duty order and such determination in its entirety is reviewable by the Court, it constitutes a dumping

---

[1] Although these cited decisions involve Commerce determinations that were issued prior to the implementation of the 2015 Trade Preferences Extension Act amendments to 19 U.S.C. § 1677e, they are still relevant because the Court's authority to review Commerce's determinations under 19 U.S.C. § 1516a(b)(1)(B)(i), including Commerce's calculations of transaction-specific margins within an administrative review, has not changed. *See* Trade Preferences Extension Act of 2015 § 502, Pub. L. No. 114-27, 129 Stat. 362 (2015) (codified in 19 U.S.C. § 1677e(d)).

margin calculated from any segment of the multilayered wood flooring antidumping proceeding within the meaning of 19 U.S.C. § 1677e(d)(1)(B).

**III.   Reconsideration Is Warranted Because The Court Decided Issues Beyond Those Presented By The Parties**

Reconsideration is additionally warranted because the parties have not previously raised the issue, either before this Court or before Commerce, of whether 19 U.S.C. § 1677e(d) authorizes the use of a transaction-specific dumping margin as an AFA rate and whether the method Commerce used to select Sino-Maple's AFA rate is consistent with this interpretation of 19 U.S.C. § 1677e(d).  *See Irwin Indus. Tool Co.*, 269 F. Supp. 3d at 1301 (recognizing that reconsideration is appropriate where the court "decided issues beyond those presented {by the parties}.").

In its order, the Court acknowledges that Commerce did not supply an interpretation of 19 U.S.C. § 1677e(d).  *See* Slip Op. at 34 ("{h}ere, Commerce *apparently* construes the statutory language that permits it to use its discretion to apply the highest dumping margin from any segment to mean that it may apply the highest transaction-specific dumping margin calculated for the other mandatory respondent in this review.") (emphasis added).  In the preliminary results, Commerce explained that "{u}nder {19 U.S.C. § 1677e(d),} Commerce may use any dumping margin from any segment of a proceeding under an {antidumping duty} order when applying an adverse inference, including the highest of such margins."  Preliminary Decision Memorandum at 14, PR 403.  However, because no party challenged Commerce's authority to use a transaction-specific margin as the AFA rate in their administrative case briefs or briefs before the Court, Commerce did not provide an interpretation of 19 U.S.C. § 1677e(d) with respect to its authority to use the highest transaction-specific dumping margin in this administrative review as Sino-Maple's AFA rate.  *See e.g.*, Scholar Home Administrative Case

13

Brief, PR 482 at 22-27, Sino-Maple and Jiangsu Senmao Administrative Case Brief, PR 440 at 5-6; *see also* Sino-Maple Mem. Supp. Mot. J. Agency R., ECF No. 57 at 33-38; Scholar Home Mem. Supp. Mot. J. Agency R., ECF No. 48 at 36-42.

In its order, the Court refers to an argument raised by Scholar Home in the administrative proceeding that "the selection of {the AFA rate} was unreasonable, punitive, and not in accordance with law." *See* Slip Op. at 33 (citing PR 482 at 22-27). However, we respectfully submit that Scholar Home did not interpret or expound on the meaning of 19 U.S.C. § 1677e(d) in its administrative case brief. Scholar Home only argued that Commerce's selection of the highest transaction-specific margin as the AFA rate was based on an aberrational transaction, that Commerce failed to evaluate whether the specific circumstances of this case merited using the highest transaction-specific margin as the AFA rate, and that the rate was punitive. Although Scholar Home cited to cases discussing 19 U.S.C. § 1677e(d), Scholar Home did not argue that 19 U.S.C. § 1677e(d) does not permit Commerce to use a transaction-specific dumping margin as an AFA rate. *See* PR 482 at 23-24. Rather, Scholar Home cited case law that found Commerce selected an aberrational AFA rate or failed to sufficiently justify the selection of the highest AFA rate. *Id.* (citing *Hyundai Steel Co. v. United States*, 319 F. Supp. 3d 1327 (Ct. Int'l Trade 2018)) and PR 482 at 24-26 (citing *POSCO v. United States*, 337 F. Supp. 3d 1265 (Ct. Int'l Trade 2018)). Indeed, Scholar Home acknowledged that the TPEA "has broadened the Department's discretion in selecting a rate that is based on adverse inferences". *Id.* at 23.

Because the interpretation of 19 U.S.C. § 1677e(d) we advance in this motion was not raised in the parties' briefing and this Court's decision to remand this matter to Commerce hinges on a particular reading of 19 U.S.C. § 1677e(d), it would be in the interest of justice for

14

the Court to reconsider its holding in light of the interpretation of this statute we advanced above.  *See* pp. 7-13, *supra*.  However, if this Court is not persuaded by our interpretation of 19 U.S.C. § 1677e(d) based on the plain language of the statutes, reconsideration is still warranted to give Commerce an opportunity to provide its interpretation of 19 U.S.C. § 1677e(d).

If the Court does not adopt the interpretation we advance in this brief on remand, it should still modify the order to direct that Commerce provide its interpretation of 19 U.S.C. § 1677e(d) in the first instance.  Commerce should be provided with this opportunity to offer its interpretation of 19 U.S.C. § 1677e(d) on remand given the principles of party presentation and exhaustion.

The principle of party presentation dictates that a reviewing court should not normally search the record for unargued and unbriefed reasons to find in favor of one party.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).  The Supreme Court has explained that, "{i}n our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation.  That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."  *Id*. (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (internal quotation marks omitted)).  The Court further explained that it is not the role of the judiciary to "sally forth each day looking for wrongs to right," rather courts "wait for cases to come to {them}, and when {cases arise, courts} normally decide only questions presented by the parties."  *Id*. (internal citation omitted).  Because no party challenged Commerce's authority under 19 U.S.C. § 1677e(d) to use a transaction-specific dumping margin as an AFA rate and there are no extraordinary circumstances that would warrant departing from the principle of party

15

presentation, the Court should reconsider the portions of its order where it interpreted 19 U.S.C. § 1677e(d).

Our request for reconsideration for this reason is further buttressed by this Court's "exhaustion paradigm." *Ellwood City Forge Co. v. United States*, 600 F. Supp. 3d 1281, 1292 (Ct. Int'l Trade 2022) (citing 28 U.S.C. § 2637(d)).  The Supreme Court has recognized that "{a} reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the {agency} . . . of an opportunity to consider the matter, make its ruling, and state the reasons for its action." *Unemployment Comp. Comm'n of Alaska v. Aragon*, 329 U.S. 143, 155 (1946).  Thus, this Court will not normally entertain arguments that are not raised by the parties before Commerce. Indeed, "{e}ven when the statute is clear, however, it is always preferable to have the agency's interpretation of the statute it is entrusted to administer set forth on the administrative record." *Fuwei Films (Shandong) Co. v. United States*, 791 F. Supp. 2d 1381, 1384 (Ct. Int'l Trade 2011).

Because the issue of whether Commerce may lawfully use transaction-specific margins as an adverse rate under 19 U.S.C. § 1677e(d) was not presented in the briefing, any concerns regarding reconsideration becoming "a mechanism to allow a losing party the chance to repeat arguments or to relitigate issues previously before the court" are not implicated.  *See Ford Motor Co.*, 751 F. Supp. 2d at 1317 (internal quotation marks omitted).  Accordingly, the Court should grant reconsideration and revise its opinion to hold that Commerce lawfully selected a transaction specific margin pursuant to 19 U.S.C. § 1677e(d) as we advance in this brief; alternatively, the Court should revise its remand instruction to direct Commerce to provide an

explanation of its interpretation of 19 U.S.C. § 1677e(d) prior to any redetermination of Sino-Maple's AFA rate.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that this Court grant our motion for reconsideration and revise its order to reflect that Commerce lawfully selected Sino-Maple's AFA rate.  Alternatively, we request that the Court revise its remand instructions to direct Commerce to provide its position as to the correct interpretation of 19 U.S.C. § 1677e(d) before requiring Commerce to redetermine Sino-Maple's AFA rate. We also respectfully request that the deadline established in the December 22, 2022 remand order for Commerce to complete its remand redetermination be stayed pending the Court's disposition of this motion for reconsideration.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

<u>s/ Tara K. Hogan</u>
TARA K. HOGAN
Assistant Director

<u>s/ Brendan Jordan</u>
BRENDAN JORDAN
Trial Attorney
OF COUNSEL:                               Commercial Litigation Branch
Civil Division
RACHEL BOGDAN                    United States Department of Justice
Attorney                                    P.O. Box 480
Office of the Chief Counsel           Ben Franklin Station
for Trade Enforcement and Compliance   Washington, D.C. 20044
United States Department of Commerce   Tel: (202) 616-0342

January 23, 2023                          Attorneys for Defendant

17