A-570-970<br>
Remand<br>
Slip Op. 24-29<br>
POR: 12/1/2016 – 11/30/2017<br>
**Public Document**<br>
E&C/OVIII: DW

*Fusong Jinlong Wooden Group Co., Ltd., et al v. United States,*<br>
**Court No. 19-144, Slip Op. 24-29 (CIT March 11, 2024)**<br>
**Multilayered Wood Flooring from the People's Republic of China**

FINAL RESULTS OF REDETERMINATION<br>
PURSUANT TO COURT ORDER

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the United States Court of International Trade's (the Court) remand order in *Fusong Jinlong Wooden Group Co. v. United States*, Court No. 19-00144, Slip Op. 24-29 (March 11, 2024) (*Remand Order*). The Court's *Remand Order* concerns the final results of the 2016-2017 administrative review of the antidumping duty order on multilayered wood flooring (MLWF) from the People's Republic of China (China),[1] as well as *Fusong Jinlong Wooden Group Co. v. United States*, Court No. 19-00144, Slip Op. 22-155 (CIT December 22, 2022) (*Fusong I*). The Court's *Remand Order* found that Commerce's calculation of the separate rate via a simple average of the two individually examined mandatory respondents' rates, a zero percent rate and an 85.13 percent rate based on facts available with an adverse inference (AFA), was a deviation from the expected method whereby a weighted average would be used to calculate the separate rate, and thus, Commerce was required to explain this deviation.

---

[1] *See Multilayered Wood flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2015–2016*, 84 FR 38002 (July 26, 2018) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM); *see also Multilayered Wood Flooring from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 76 FR 76690 (December 8, 2011).

The Court remanded to Commerce for further explanation or reconsideration of Commerce's use of a simple-average method for determining the separate rate.

On December 22, 2022, the Court issued its decision in *Fusong I*, which remanded Commerce's *Final Results* on the issue of whether its use of Jiangsu Senmao Bamboo and Wood Industry Co., Ltd.'s (Senmao) highest transaction-specific dumping margin as Sino-Maple (Jiangsu) Co., Ltd.'s (Sino-Maple) AFA rate was authorized by section 776(d) of the Tariff Act of 1930, as amended (the Act).[2] The Court reserved decision on certain challenges to Commerce's calculation of the separate rate assigned to the respondents not selected for individual examination.[3]

After the Court issued *Fusong I*, Commerce filed a motion for reconsideration.[4] The Court granted Commerce's motion and, upon reconsideration, found that Commerce's method for selecting an AFA rate for Sino-Maple was lawful.[5] In the subsequent *Remand Order*, the Court addressed the issue on reserve of whether Commerce's method of calculating the separate rate was supported by substantial evidence and in accordance with law.[6]

## II. REMANDED ISSUE

**Methodology to Determine Separate Rate**

    1. Background

When conducting the underlying administrative review, Commerce determined that it would not be practicable in light of its resources to individually examine all companies for which an administrative review was initiated, and therefore, selected Senmao and Sino-Maple—the two

---

[2] *See Fusong I*.
[3] *Id.*, Court No. 19-00144, Slip Op. 22-155 at 1227 & n.8.
[4] *See Fusong Jinlong Wooden Group Co., Ltd. v. United States*, Slip Op. 23-145 (CIT October 4, 2023).
[5] *Id*.
[6] *Id*.

largest exporters of the subject wood flooring by volume—as mandatory respondents.[7] After conducting its review, Commerce determined a zero percent rate for Senmao and an 85.13 percent rate for Sino-Maple.[8] Sino-Maple's rate was based entirely on AFA.[9]

Commerce also determined that some of the exporters and producers not selected for individual review were eligible for a separate rate by demonstrating both *de jure* and *de facto* independence from the Chinese government.[10] In other words, these separate rate companies successfully rebutted Commerce's presumption of state control in non-market economies.

---

[7] *See* Memorandum, "2016-2017 Administrative Review of Multilayered Wood Flooring from the People's Republic of China: Selection of Respondents," dated June 19, 2018.
[8] *See Final Results*, 84 FR at 38003.
[9] *See Final Results* IDM at 10-12.
[10] *See* Baishan Huafeng Wood Product Co., Ltd.'s Letter, "Multilayered Wood Flooring from the PRC: Separate Rate Application of Baishan Huafeng Wooden Product Co., Ltd.," dated March 24, 2018; Benxi Flooring Factory (General Partnership)'s Letter, "Multilayered Wood Flooring from the People's Republic of China: Separate Rate Application," dated March 23, 2018; Dalian Guhua Wooden Product Co., Ltd.'s Letter, "Multilayered Wood Flooring from the PRC: Separate Rate Application of Dalian Guhua Wooden Product Co., Ltd.," dated March 24, 2018; Guangzhou Homebon Timber Manufacturing Co., Ltd.'s Letter, "Multilayered Wood Flooring from People's Republic Of China: Guangzhou Homebon Timber Manufacturing Co., Ltd.'s Separate Rate Application," dated March 27, 2018; Innomaster Home (Zhongshan) Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China: Separate Rate Application," dated March 26, 2018; Jilin Forest Industry Jinqiao Flooring Group Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China: Submission of Separate Rate Application," dated March 27, 2018; Liaoning Daheng Timber Group Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China: Submission of Separate Rate Application,," dated March 23, 2018; Power Dekor Group Co., Ltd.'s Letter, "Multilayered Wood Flooring from People's Republic Of China: Power Dekor Group Co., Ltd.'s Separate Rate Application," dated March 27, 2018; Scholar Home (Shanghai) New Material Co., Ltd.'s Letter, "Separate Rate Application for Scholar Home in the Administrative Review of the Antidumping Duty Order on Multilayered Wood Flooring from the People's Republic of China (A-570-970) (POR: 12/1/16 – 11/30/17)," dated April 2, 2018; Shandong Longteng Wood Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China: Separate Rate Application," dated March 23, 2018; Shanghaifloor Timber (Shanghai) Co., Ltd.'s Letter, "Multilayered Wood Flooring from the PRC: Separate Rate Application," dated March 26, 2018; Yekalon Industry Inc.'s Letter, "Separate Rate Application for Yekalon Industry Inc.: Sixth Administrative Review of the Antidumping Duty Order on Multilayered Wood Flooring from the People's Republic of China ("PRC")," dated March 26, 2018; Zhejiang Biyork Wood Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China ("Multilayer Wood Flooring"); A-570-970; Separate Rate Application," dated March 25, 2018; Zhejiang Fudeli Timber Industry Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China ("Multilayered Wood Flooring"); A-570-970; Separate Rate Application," dated March 25, 2018; and Zhejiang Simite Wooden Co., Ltd.'s Letter, "Multilayered Wood Flooring from the People's Republic of China ("Multilayer Wood Flooring"); A-570-970; Separate Rate Application," dated March 25, 2018.

Commerce took the simple average of Senmao's zero percent rate and Sino-Maple's 85.13 percent AFA rate to arrive at a separate rate of 42.57 percent and applied it to those companies that were eligible to receive a separate rate.[11]

In the *Remand Order*, the Court determined that Commerce's method of calculating the separate rate using a simple average was a departure from its normal practice of using the expected method. Specifically, citing section 735(c)(5)(B) of the Act and the Statement of Administrative Action (SAA),[12] the Court found that the statutory exception permits Commerce to use any reasonable method to establish the separate rate, but that in such cases the expected method Commerce would follow is to weight average the zero and *de minimis* margins with the AFA margins and that by choosing to use a simple average, Commerce was required to provide a reasonable explanation for its departure.[13] The Court was also unconvinced by Commerce's argument that Sino-Maple's volume data were unavailable, and thus, warranted the use of a simple average. There, the Court found that Commerce did not explain why the company's reported volume information, which Commerce relied on for mandatory respondent selection purposes, was not also reliable for calculating the weighted-average dumping margin under the expected method, noting that Commerce appeared to have placed on the record the information it claims was missing.[14] On May 7, 2024, we released the draft results of redetermination to interested parties with an opportunity to comment, but we received no comments.

---

[11] *See Final Results*, 84 FR at 38003 and *Final Results* IDM at 23-26.
[12] *See* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, Vol. 1 (1994), at 873.
[13] *See Remand Order* at 8-13.
[14] *Id.* at 14-19.

**2. Analysis**

Pursuant to the Court's *Remand Order*, Commerce has revisited the calculation of the separate rate. Section 735(c)(5)(B) of the Act states that:

> If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or *de minimis* margins, or are determined entirely under section 776, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

With respect to the reasonable method as described in the statute, the SAA states that:

> In such situations, Commerce may use any reasonable method to calculate the all-others rate. The expected method in such cases will be to weight-average the zero and *de minimis* margins and margins determined pursuant to the facts available, provided that volume data is available. However, if this method is not feasible, or if it results in an average that would not be reasonably reflective of potential dumping margins for non-investigated exporters or producers, Commerce may use other reasonable methods.

Commerce agrees with the Court's *Remand Order* that Sino-Maple's quantity and value information is available on the record for use in calculating a weighted-average dumping margin in line with the statute and the SAA. As the Court pointed out, Commerce entered this information into the record and also included a breakdown of Sino-Maple's reported and unreported U.S. sales quantity and value for the period of review.[15] Thus, on remand, for the analysis below, Commerce used Sino-Maple's value information to calculate the weighted-average rate, in accordance with Commerce's current practice.[16]

As part of its normal practice for ensuring that a party's business proprietary information (BPI) concerning sales value information is not exposed, Commerce normally calculates: (A) a

---

[15] *See* Memorandum, "Application of Adverse Facts Available to Sino-Maple (Jiangsu) Co., Ltd. for the Preliminary Results of Review," dated December 17, 2018, at 3; *see also Remand Order* at 17, footnote 13.
[16] *See, e.g., Mattresses from Indonesia: Final Results of Antidumping Duty Administrative Review; 2020-2022,* 88 FR 85240 (December 7, 2023).

weighted average of the estimated dumping rates calculated for the examined respondents; (B) a simple average of the estimated dumping rates calculated for the examined respondents; and (C) a weighted average of the estimated dumping rates calculated for the examined respondents using each company's publicly-ranged U.S. sales values for the merchandise under consideration. Commerce then compares (B) and (C) to (A) and selects the rates closest to (A) as the most appropriate rate for all other producers and exporters.[17] Applicable here, although Sino-Maple's U.S. sales data are now public, Senmao's U.S. sales data remain BPI and at risk of exposure to the other mandatory respondent. Accordingly, Commerce followed its normal method described above to ensure that Senmao's BPI is protected. For an analysis of Commerce's methodology and the calculation results, *see* the Calculation Memorandum.[18]

### III.   FINAL RESULTS OF REDETERMINATION

In accordance with the Court's *Remand Order*, Commerce has revised certain aspects of its dumping analysis. Based on these changes, Commerce determines that the weighted-average dumping margin is 31.63 percent for the non-individually examined companies eligible for a separate rate for the period December 1, 2016, through November 30, 2017.[19] No party commented on the draft results of redetermination, in which use used this methodology for calculating the weighted-average dumping margin for the non-individually examined companies that are eligible for a separate rate. Accordingly, we continue to use the same methodology in the final results of redetermination.

---

[17] *Id.*
[18] *See* Memorandum, "Multilayered Wood Flooring from the People's Republic of China: Final Results of Redetermination Pursuant to Court Remand – Calculation of the Weighted-Average Separate Rate," dated concurrently with these final results of redetermination (Calculation Memorandum).
[19] *Id.*

If Commerce's determination is sustained by the Court, Commerce will publish a notice of amended final results in the *Federal Register* consistent with *Timken*[20] and issue appropriate instructions to U.S. Customs and Border Protection, consistent with the redetermination above.

6/7/2024

X _____

Signed by: RYAN MAJERUS

Ryan Majerus
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties of the
  Assistant Secretary for Enforcement and Compliance

---

[20] *See Timken Co. v. United States*, 893 F.2d 337 (Fed. Cir. 1990) (*Timken*); *see also Diamond Sawblades Manufacturers Coalition v. United States*, 626 F.3d 1374 (Fed. Cir. 2010).